# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DERAY MCKESSON, ET AL.**                    **CIVIL ACTION NO.**

**VERSUS**                                    **16-520-JWD-EWD**

**CITY OF BATON ROUGE, ET AL.**

## ORDER AND REASONS

This matter is before the Court on the Joint Motion for Preliminary Approval of Settlement Agreement, Form, Content and Manner of Notice Distribution and Publication, and Certification for Settlement Purposes Only (the "Joint Motion").[1]  Also before the Court is the Proposed Class Forms and Request for Fairness Hearing, Settlement Approval and Class Certification, filed by defendant Colonel Michael Edmonson.[2]

For the following reasons, the Joint Motion is **GRANTED in part.**  The Joint Motion is **DENIED** to the extent that it seeks approval of the proposed class forms attached thereto as Exhibit 1,[3] as the class forms have since been revised and re-submitted to the Court as Exhibits 1-4[4] to the Defendants [sic] Memorandum on Preliminary Approval of Settlement Agreement Following 5/1/17 Court Conference,[5] which are hereby preliminarily approved.  The Joint Motion is

---

[1] R. Doc. 52.  On January 25, 2017, the parties filed a Joint Consent Motion for Referral to Magistrate Judge, consenting to the referral to the undersigned Magistrate Judge of the Joint Motion and all matters related to the settlement and resolution of the case, except for trial.  (R. Doc. 57).  On February 9, 2017, District Judge John W. deGravelles issued an Order granting the Joint Consent Motion, referring the Joint Motion and the pending Ex Parte Motion to Substitute Revised Claim Form (R. Doc. 56) to the undersigned Magistrate Judge.  (R. Doc. 58).  The undersigned granted the Ex Parte Motion to Substitute Revised Claim Form on February 15, 2017.  (R. Doc. 60).
[2] R. Doc. 67.
[3] R. Doc. 52-4.
[4] R. Docs. 73-1, 73-2, 73-3, 73-4.
[5] R. Doc. 73.

otherwise **GRANTED**.  For the same reasons, the Proposed Class Forms and Request for Fairness

Hearing, Settlement Approval and Class Certification is **DENIED as moot**.

## I.      BACKGROUND

This litigation arose from the protests that occurred in Baton Rouge, Louisiana from July

6, 2016 through July 11, 2016, in response to the death of Alton Sterling.  On August 4, 2016,

DeRay McKesson, Kira Marrero, and Gloria La Riva, on their behalf and on behalf of all others

similarly situated (collectively, "Plaintiffs") filed a Class Action Complaint for Damages for

Deprivation of Civil Rights ("Complaint")[6] against the City of Baton Rouge, East Baton Rouge

Parish, Mayor Melvin "Kip" Holden, Carl Dabadie, Jr., in his official capacity as Chief of Police

of the City of Baton Rouge, Sid J. Gautreaux, III., in his official capacity as the Sheriff of East

Baton Rouge Parish, and Colonel Michael Edmonson, in his official capacity as the Superintendent

of the Louisiana State Police (collectively, "Defendants"), seeking damages for the deprivation of

Plaintiffs' civil rights and those of other putative class members pursuant to 42 U.S.C. § 1983.[7]

Plaintiffs allege that during the protests, members of the proposed class were wrongfully arrested

and charged with a single violation of La. R.S. 14:97, Simple Obstruction of a Highway of

Commerce.[8]  In the Complaint, Plaintiffs assert claims of excessive force, false arrest, violation of

their First Amendment rights, First Amendment retaliation, inadequate prison conditions,

excessive bond fees, and various state law tort claims.[9]  Plaintiffs seek compensatory damages and

equitable relief in the form of orders expunging their arrests and directing Defendants to return

any and all bonds or bail paid to the Defendants by Plaintiffs and potential class members.[10]

---

[6] R. Doc. 1.
[7] R. Doc. 1 at 14-15.
[8] R. Doc. 1 at 7-8.
[9] R. Doc. 1 at 15-19.
[10] R. Doc. 1 at 20.

On August 23, 2016, Plaintiffs filed a First Amended and Supplemental Class Action Complaint for Damages for Deprivation of Civil Rights,[11] adding Brandon Wayne Erp as a proposed class representative, adding Hillar C. Moore, III., District Attorney for the 19th Judicial District, East Baton Rouge Parish as a defendant, and requesting that Defendants be ordered to obtain the requested expungements at no cost to the class members.[12]

On November 30, 2016, the parties filed the Joint Motion that is currently before the Court,[13] asserting that Plaintiffs, Defendants, and AIX Group d/b/a Nova ("Nova") have agreed on a proposed settlement of all claims of the proposed class against Defendants, Nova and all related parties, as particularly set forth in a Memorandum of Understanding ("MOU").[14]  In the Joint Motion, the parties request that the Court: (1) preliminarily approve the settlement contained in the MOU as fair and reasonable, entered into in good faith and without collusion, and within the range of judicial approval; (2) certify this matter as a class action for settlement purposes only; (3) approve the management plan of the settlement set forth in the supporting memorandum and the MOU; (4) approve the Claim Form and form of notice of the proposed settlement; (5) schedule a Fairness Hearing to consider matters in connection with the proposed settlement, including any objections thereto, and order the dissemination of the Claim Form to class members; (6) enter a final judgment approving the settlement and all terms thereof as set forth in the MOU, order that the settlement benefits be disbursed, and dismiss with prejudice all of the claims and released claims of the class members against Defendants, Nova and the related parties; (7) appoint DeRay McKesson, Kira Marrero, Gloria La Riva, and Brandon Wayne Erp as class representatives; (8) appoint Roy J. Rodney, Jr. and John Etter of Rodney & Etter, LLC as claims administrators; (9)

---

[11] R. Doc. 21.
[12] *Id*. at 1-2.
[13] R. Doc. 52.
[14] R. Doc. 52-3.

appoint Roy J. Rodney, Jr. and John Etter of Rodney & Etter, LLC as class counsel; and (10) maintain continuing jurisdiction over the settlement proceedings to insure the effectuation thereof for the benefit of the settlement class.[15]

On January 25, 2017, the parties filed a Joint Consent Motion for Referral to Magistrate Judge, consenting to the referral of the Joint Motion and all matters related to the settlement and resolution of the case, except for trial, to the undersigned Magistrate Judge.[16]  On February 9, 2017, District Judge John W. deGravelles issued an Order granting the Joint Consent Motion, referring the Joint Motion and the pending Ex Parte Motion to Substitute Revised Claim Form[17] to the undersigned Magistrate Judge.[18]  On February 15, 2017, the undersigned Magistrate Judge granted the Ex Parte Motion to Substitute Revised Claim Form[19] and set the Joint Motion for a hearing on February 24, 2017,[20] which was subsequently reset for March 1, 2017.[21]  As set forth in greater detail in the Hearing Report and Order issued by the undersigned on March 1, 2017,[22] counsel for the parties asserted at the hearing that the proposed settlement class satisfies the Rule 23(a) requirements of numerosity, commonality, typicality, and adequate representation and that common questions of law and fact predominate over the claims of individual proposed class members, as required by Rule 23(b).[23]  Counsel also asserted that the proposed settlement

---

[15] R. Doc. 52 at 3-4.  In their supplemental briefing submitted to the Court on May 5, 2017, Plaintiffs assert that Brandon Wayne Erp is no longer a class representative because his claims are too dissimilar from the claims of the proposed class.  (R. Doc. 72 at 8).  Defendants similarly assert that Mr. Erp is no longer a class member because he had an outstanding warrant at the time of his arrest.  (R. Doc. 73 at 2).  On May 19, 2017, Plaintiffs' counsel filed an Ex Parte/Consent Motion for Voluntary Dismissal Without Prejudice of Individual Claims of Brandon Wayne Erp, seeking to dismiss Mr. Erp's claims without prejudice.  (R. Doc. 74).  The Consent Motion is currently pending before the Court.
[16] R. Doc. 57.
[17] R. Doc. 56.
[18] R. Doc. 58.
[19] R. Doc. 60.
[20] R. Doc. 59.
[21] R. Doc. 62.
[22] R. Doc. 63.
[23] R. Doc. 63 at 2-5.

agreement is fundamentally fair, reasonable, and adequate under Rule 23(e)(2) and addressed the adequacy and substance of the proposed notice of settlement.[24]  The undersigned continued the March 1, 2017 Motion Hearing to allow the parties to submit additional information and briefing regarding the matters discussed at the hearing.[25]

On March 10, 2017, defendant Colonel Michael Edmonson filed the Proposed Class Forms and Request for Conference to Discuss Same.[26]  The undersigned held a telephone conference on March 21, 2017, during which counsel for the parties discussed specific provisions in the proposed Notice of Proposed Class Action Settlement,[27] including the manner for class members to file any written objections to the proposed settlement agreement, the inclusion of a provision for class members to contact Plaintiffs' counsel with any questions, comments, or concerns regarding the proposed settlement agreement, and the claims covered by the proposed settlement agreement.[28] Counsel for defendant Edmonson stated that she would revise and resubmit the proposed class action forms based upon what was discussed during the telephone conference.[29]

On April 4, 2017, defendant Edmonson filed the Proposed Class Forms and Request for Fairness Hearing, Settlement Approval and Class Certification, which is currently before the Court.[30]  At the request of the parties, the undersigned scheduled a status conference for May 1, 2017 to discuss the revised class action forms.[31]  As set forth in the Telephone Conference Report and Order issued on May 1, 2017, counsel for the parties advised the undersigned that the parties had agreed to amend the MOU to resolve some of the concerns previously raised regarding the

---

[24] R. Doc. 63 at 5-6; *See,* R. Doc. 52-4.
[25] R. Doc. 63 at 6.
[26] R. Doc. 64.
[27] R.Doc. 64-1.
[28] R. Doc. 66 at 1-2 (*citing* R. Docs. 64-1, 64-2).
[29] R. Doc. 66 at 2-3 (*citing* R. Docs. 64-1, 64-2, 64-3).
[30] R. Doc. 67.
[31] R. Doc. 69.

proposed settlement agreement.[32]  Counsel also advised that the parties would revise the proposed

class action forms to reflect the changes made to the MOU and resubmit them for review and

preliminary approval by the Court.[33]  The Court granted the parties additional time in which to

submit supplemental briefing regarding whether the proposed settlement class satisfies the

requirements of Fed. R. Civ. P. 23.  Counsel for the parties agreed to submit any supplemental

briefing, along with a final Notice of Proposed Class Action Settlement, by Friday May, 5, 2017.[34]

On May 5, 2017, Plaintiffs filed a Memorandum on Preliminary Approval of Settlement

Agreement Following 5/1/17 Court Conference,[35] addressing the concerns raised regarding the

proposed settlement agreement.  Plaintiffs included a copy of the First Amended Memorandum of

Understanding ("First Amended MOU"), which memorializes the revised settlement agreement

entered into by the parties.[36]  Also on May 5, 2017, Defendants filed a Memorandum on

Preliminary Approval of Settlement Agreement Following 5/1/17 Court Conference, similarly

addressing the undersigned's concerns regarding whether the proposed settlement satisfies the

requirements of Rule 23.[37] On May 19, 2017, Plaintiffs' counsel filed an Ex Parte/Consent Motion

for Voluntary Dismissal Without Prejudice of Individual Claims of Brandon Wayne Erp, seeking

to dismiss Mr. Erp's claims without prejudice.[38]  The Consent Motion is currently pending before

the Court.

On May 22, 2017, the undersigned issued an Order requiring Defendants to file a motion

to substitute the Notice of Proposed Class Action Settlement[39] and the Claim Form[40] with a final

---

[32] R. Doc. 71 at 1.
[33] R. Doc. 71 at 1-2.
[34] R. Doc. 71 at 2.
[35] R. Doc. 72 (*citing* R. Docs. 63, 71).
[36] R. Doc. 72-1.
[37] R. Doc. 73 (*citing* R. Doc. 63).
[38] R. Doc. 74.
[39] R. Doc. 73-1.
[40] R. Doc. 73-2.

version of each form that accurately reflects the tiered method of payment set forth in the First

MOU and specifies a deadline for the class members to submit the Claim Form to Plaintiffs'

Counsel.[41]   On May 25, 2017, Plaintiffs filed a Motion to Substitute Revised Notice, Opt Out

Form, Objection Form and Claim Form,[42] providing a revised version of each of the proposed class

action settlement forms,[43] as well as a Proposed Schedule for Distribution of Notice and Class

Members' Responses.[44]  The undersigned granted the Motion to Substitute on May 26, 2017.[45]

## II.    PROPOSED SETTLEMENT AGREEMENT

### A.  Class Definition

The First Amended MOU defines the settlement class as:

> All persons arrested in connection with protests in Baton Rouge,
> Louisiana between July 6, 2016 and July 11, 2016 for the single
> charge of Simple Obstruction of a Highway pursuant to La. R.S.
> 14:97, who were not charged with any additional legal violation, and
> who had no outstanding warrants except for those persons who
> execute a timely and valid opt-out or exclusion request pursuant to
> Section 8 of this MOU.  (the "Settlement Class")  Defendants
> estimate that there are approximately between seventy and eighty
> potential members of the Settlement Class.[46]

Section 8 of the First Amended MOU provides, in pertinent part, the following:

> a. Each individual who properly returns to Plaintiffs' counsel a
> timely written request for exclusion/opt-out shall be excluded from
> the Settlement Class and shall have no rights under this MOU or the
> class settlement agreement.  An exclusion/opt-out request shall be
> deemed timely if it is postmarked no later than 45 calendar days after
> the initial notice mailing date.[47]

---

[41] R. Doc. 77.
[42] R. Doc. 78.
[43] R. Docs. 78-1, 78-2, 78-3, and 78-4.
[44] R. Doc. 78-5.
[45] R. Doc. 79.
[46] R. Doc. 72-1 at 2.
[47] R. Doc. 72-1 at 6.

**B.  Monetary Payment**

Under the terms of the First Amended MOU and the settlement agreement contained therein, Defendants and Nova will pay $500 to each member of the settlement class who was incarcerated for less than three days, $700 to each member of the settlement class who was incarcerated for three days, and $1,000 to each member of the settlement class who was incarcerated for four days.[48]  To receive payment, class members will need to submit a Claim Form by September 5, 2017, indicating the number of days that they were incarcerated on the charge of Simple Obstruction of a Highway of Commerce, La. R.S. 14:97.[49]

The proposed settlement agreement also provides that class members will be reimbursed for any fees paid to obtain a bond from a bondsman and that any cash bond posted by or on behalf of a class member will be returned to the individual who posted the bond without requiring payment of the customary bond release fees.[50]

**C.  Equitable Relief**

The proposed settlement agreement also provides that the Defendants will file a motion to expunge each class member's arrest record for the charge of Simple Obstruction of a Highway of Commerce under La. R.S. 14:97, made in connection with the July 2016 protests.[51]  Defendants will expedite the processing of the expungements, assume all costs of obtaining the expungements, and waive their respective fees customarily charged for obtaining expungements.[52]

---

[48] R. Doc. 72-1 at 3-4.
[49] R. Doc. 73-1 at 2; R. Doc. 73-2; *See,* R. Doc. 73-5 at 3.
[50] R. Doc. 72-1 at 4.
[51] R. Doc. 72-1 at 4.
[52] *Id.*

8

### D.  Class Notice

The parties have agreed that class members will be notified of the settlement by first class United States mail to the address provided by the class members at the time of their arrest, detention, bond, and release.[53]  The parties have also agreed that Defendants will prepare a mailing list of the names and addresses of all potential class members[54] and that Plaintiffs' counsel will send the notice to potential class members by June 2, 2017, three days after receiving preliminary approval of the settlement agreement.[55]  If multiple addresses were provided, the notice will be sent to multiple addresses.[56]  If mailed notices are returned undeliverable, Plaintiffs' counsel will send a second notice on June 28, 2017 by express mail, return receipt requested.[57]

### E.  Opt-Out Procedure and Opportunity to Object

Class members wishing to opt out of the settlement agreement may do so by mailing a written request for exclusion to Plaintiffs' counsel no later than July 17, 2017, or 45 days after the initial notice mailing date.[58]  For class members whose initial notice was returned undeliverable, the deadline for opting-out of the class is August 4, 2017, or 35 days from the expected receipt of the second notice.[59]  Class members may request exclusion from the settlement class by using the Damages Class Opt-Out Form provided with the notice.[60]

---

[53] R. Doc. 72-1 at 5.
[54] R. Doc. 72-1 at 5.
[55] R. Doc. 73-5 at 2.  The Court notes that there is discrepancy regarding which party is responsible for sending notice of the proposed settlement.  The First Amended MOU provides that Defendants' counsel will send notice to the class members within 21 days after preliminary approval of the settlement.  (R. Doc. 72-1 at 5).  However, the Proposed Schedule for Distribution of Notice and Class Members' Responses filed by Plaintiffs on May 25, 2017 provides that Plaintiffs' counsel will send the notice three days after preliminary approval of the settlement agreement.  (R. Doc. 73-5 at 1-2).  The more recently-filed document will control for purposes of preliminary approval.  However, the parties must specifically address and resolve this conflict in their motion for final approval of the settlement agreement.
[56] R. Doc. 63 at 5; *See also*, R. Doc. 72 at 8.
[57] R. Doc. 73-5 at 1-2.
[58] R. Doc. 73-5 at 2.
[59] R. Doc. 73-5 at 3.
[60] R. Doc. 73-3.

Defendants and Nova have reserved the right to withdraw from the proposed settlement agreement if more than 20% of potential class members opt-out of the settlement class.[61]  For this reason, Plaintiffs' counsel has agreed to file and serve a declaration identifying all class members who received the initial notice and made a timely request to opt-out of the settlement class by August 1, 2017, or 60 days from the initial notice mailing date.[62]  Plaintiffs' counsel will inform Defendants of the number of class members who received the second notice and made a timely request to opt-out of the settlement class by August 28, 2017, or 60 days from the mailing of the second notice.[63]  Defendants and Nova have agreed to notify Plaintiffs' counsel of their intent to withdraw from the settlement agreement by September 7, 2017, or 10 days after receiving the second notice of the number of class members who have chosen to opt out of the settlement class.[64]  Defendants and Nova have agreed not to include the potential class members named in the lawsuit captioned *Tennart v. City of Baton Rouge,* 17-cv-179-BAJ-RLB in calculating the percentage of class members who have chosen to opt-out of the settlement class in this case.[65]

Class members also have the right to object to the proposed settlement agreement by mailing or personally delivering a written objection to the Court by July 17, 2017, or 45 days from the initial notice mailing date.[66]  For those class members whose initial notice was returned undeliverable, the deadline for mailing or personally delivering a written objection to the Court is August 4, 2017, or 35 days from the expected receipt of the second notice.[67]  The written objection must include the following information: (1) the name of the case, *McKesson v. City of Baton Rouge*, No. 16-520-JWD-EWD; (2) the class member's full name and address sufficient to identify

---

[61] R. Doc. 72-1 at 6.
[62] R. Doc. 72-1 at 6; R. Doc. 73-5 at 3.
[63] R. Doc. 73-5 at 3.
[64] R. Doc. 73-5 at 3; *See also,* R. Doc. 72-1 at 6.
[65] R. Doc. 72-1 at 6.
[66] R. Doc. 73-5 at 2; *See also*, R. Doc. 73-1 at 2.
[67] R. Doc. 73-5 at 3.

his membership in the class; (3) a notice of intention to appear at the Fairness Hearing; (4) the specific ground for the objection and all documents for the Court to review in support of the objection; and (5) identification of any previous objections filed by the class member or his attorney.[68]  Class members may file their objection using the Objection to Settlement form provided with the notice.[69]  Except for good cause shown, failure to file an objection with the Court will bar a class member from participating at the Fairness Hearing.  Any class member who files an objection to the settlement agreement but fails to appear at the Fairness Hearing will be deemed to have waived his objection.[70]

### F.  Claims Administration

The parties move to have Plaintiffs' counsel, Roy J. Rodney, Jr. and John Etter of Rodney & Etter, LLC, appointed as both class counsel and claims administrator.[71]  The parties request that Plaintiffs' counsel be allowed to handle the claims administrative process in-house in lieu of appointing a Special Master or hiring a court-appointed disbursement agent.[72]  Plaintiffs' counsel will proceed with the distribution process within five business days of the Court granting final approval of the proposed settlement agreement and dismissing Plaintiffs' claims against the Defendants.[73]  The parties have agreed that Defendants will not be called upon to participate in the distribution process or to pay or contribute any additional funds above the amounts listed in the settlement agreement.[74]  The parties have also agreed that Defendants will not be responsible for

---

[68] R. Doc. 73-1 at 2.
[69] R. Doc. 73-4.
[70] R. Doc. 73-1 at 2.
[71] R. Doc. 52 at 2; R. Doc. 72-1 at 7.
[72] R. Doc. 72-1 at 7.
[73] R. Doc. 72-1 7.
[74] R. Doc. 72-1 at 7.

any fees, costs or expenses, including attorney's fees, relating to the distribution process or its administration.[75]

Plaintiffs' counsel will file a motion to dismiss all claims against Defendants in this litigation without prejudice within 30 days of the Court granting final approval of the proposed settlement agreement.[76]  Within 14 days of the Court granting final approval of the proposed settlement agreement and dismissing the claims against the Defendants, and after Plaintiffs notify Defendants of the total number of class members who have opted-out of the settlement class, Defendants and Nova will deliver their respective portions of the settlement funds to Plaintiffs' counsel.[77]  Defendants will begin the process of obtaining expungements for the class members within seven days of this Court granting final approval of the proposed settlement agreement and dismissing the claims against the Defendants.[78]  If the proposed settlement agreement does not receive final approval, or if the Court's final approval is reversed on appeal, the First Amended MOU and the settlement agreement therein will become null and void.[79]

### G.  Attorney's Fees

The parties have agreed that Defendants will pay all reasonable attorney fees as agreed to among counsel for the parties.[80]  If counsel are unable to reach an agreement regarding attorney's fees, the parties have agreed to refer the matter to this Court "for a final decision to be accepted by all parties."[81]

---

[75] R. Doc. 72-1 at 7.
[76] R. Doc. 72-1 at 6; *See also*, R. Doc. 73-5 at 3.
[77] R. Doc. 72-1 at 7; *See also*, R. Doc. 73-5 at 3.
[78] R. Doc. 72-1 at 7; *See also*, R. Doc. 73-5 at 3.
[79] R. Doc. 72-1 at 6.
[80] R. Doc. 72-1 at 5.
[81] *Id.*

### H. Release

In exchange for the settlement benefits described above, class members will release all claims made or which could have been made against Defendants, Nova, and any other company corporately affiliated with any of the Defendants, or which in any way arise out of the allegations that were or could have been made by class members arising out of their arrest, detention and incarceration while protesting in Baton Rouge, Louisiana between July 6, 2016 and July 11, 2016.[82]

## III.   CLASS CERTIFICATION

### A. Legal Standard

Under Fed. R. Civ. P. 23(a), the party seeking class certification bears the burden of establishing four threshold requirements: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the class representatives will fairly and adequately protect the interests of the class.  *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005) (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001)).

In addition to satisfying the four prerequisites of Rule 23(a), a party seeking certification must be able to show that one of the following requirements of Rule 23(b) is met:  (1) inconsistent adjudications would result in incompatible standards of conduct for the party opposing the class or would be dispositive of the interests of nonparty class members or would substantially impair or impede the ability of nonparty class members to protect their interests; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) issues of

---

[82] R. Doc. 72-1 at 2-3.

law and fact predominate issues unique to individual class members, and maintaining the class action is the superior procedural vehicle.  Fed. R. Civ. P. 23(b).

### B.  Discussion

For the following reasons, that parties have shown that the proposed class meets the requirements for conditional certification under Fed. R. Civ. P. 23.

#### 1.  Rule 23(a) Requirements

##### a.  *Numerosity*

To satisfy the numerosity requirement, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members."  *Pederson v. Louisiana State University*, 213 F.3d 858, 868 (5th Cir. 2000) (quoting *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981)).  As the parties point out,[83] this Court has recognized that, "Although the number of members in a proposed class is not determinative of whether joinder is impracticable, it has been noted that any class consisting of more than 40 members 'should raise a presumption that joinder is impracticable.'"  *Everson v. Bunch*, 2016 WL 3255023, at *2 (M.D. La. June 13, 2016) (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999)).

The parties assert that the numerosity requirement is satisfied under *Everson*  because the proposed class consists of approximately 79 individuals who were arrested during the protest period for the single violation of La. R.S. 14:97, Simple Obstruction of a Highway of Commerce, and had no outstanding warrants at the time of their arrest.[84]  Based on the presumption recognized by this Court in *Everson*, the proposed class satisfies the numerosity requirement of Rule 23(a).

---

[83] R. Doc. 52-1 at 6.
[84] R. Doc. 72 at 5; R. Doc. 73 at 1.

### b. *Commonality*

The commonality requirement of Rule 23(a)(2) requires that there are questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  "The test for commonality is not demanding and is met 'where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'"  *Mullen*, 186 F.3d at 625 (quoting *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997)).

The parties assert that all of the proposed class members share a common cause of action based upon their arrest for allegedly violating one statute, La. R.S. 14:97, during the July 2016 protests.[85]  The parties also assert that common questions of law and fact for the proposed class include: (1) the existence of an unconstitutional policy or procedure; and (2) whether law enforcement officials acted with deliberate indifference.[86]  Because the determination of these issues, regardless of the outcome, would resolve the allegations of the entire class, the parties have satisfied the "low threshold" of the commonality requirement.  *See*, *Everson v. Bunch*, 2016 WL 3255023, at *2 (M.D. La. June 13, 2016).

### c. *Typicality*

"Like commonality, the test for typicality is not demanding."  *Mullen*, 186 F.3d at 625.  Typicality focuses on the general similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent.  *Lightbourn*, 118 F.3d at 426.  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims."  *Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc.*, 2013 WL 6072702, at *7 (E.D. La. Nov. 18, 2013) (quoting *In re*

---

[85] R. Doc. 52-1 at 7; *See*, R. Doc. 63 at 2.
[86] R. Doc. 52-1 at 7; *See*, R. Doc. 63 at 2.

*Chinese–Manufactured Drywall Products Liability Litigation*, 2013 WL 499474 *8 (E.D. La. Feb. 7, 2013)).

In the instant case, the claims of the named Plaintiffs are virtually identical to those of the proposed class members.  The Complaint alleges that the Plaintiffs were unlawfully arrested for Simple Obstruction of a Highway of Commerce under La. R.S. 14:97 while protesting in Baton Rouge, Louisiana between July 11, 2016 and July 16, 2016.[87]  The legal theories alleged by the Plaintiffs are the same as those alleged by the rest of the class, i.e. unlawful arrest and violation of their First Amendment rights.  During the March 1, 2017 hearing on the Joint Motion,[88] the undersigned asked counsel whether all proposed class members were incarcerated for similar lengths of time, particularly because proposed class representative Brandon Wayne Erp was incarcerated for a longer period of time than other proposed class members.[89]  In their supplemental memoranda filed on May 5, 2017, the parties assert that this difference has been accounted for by creating a tiered method of payment based upon the number of days that each class member was incarcerated.[90]

At the March 1, 2017 hearing, the Court also expressed concern regarding whether the proposed class representatives will be able to adequately represent the class members based on the range of claims alleged in the Complaint, which includes claims for emotional distress, physical injuries, and lost wages.[91]  Both parties assert that the damages sought by the class members for lost wages, psychological injuries, and physical injuries are limited.[92]  Plaintiffs assert that any lost wage claims are likely de minimus, as Plaintiffs are unaware of any proposed class member whose

---

[87] R. Doc. 52-1 at 8.
[88] R. Doc. 52.
[89] R. Doc. 63 at 3.
[90] R. Doc. 72 at 6-7; R. Doc. 73 at 22.
[91] R. Doc. 63 at 3 (*citing* R. Doc. 1 at 14-21).
[92] R. Doc. 72 at 5; R. Doc. 73 at 2.

employment was terminated as a result of attending the July 2016 protests. Plaintiffs point out that the proposed settlement agreement provides for the expungement of each class member's arrest record for the charge of Simple Obstruction of a Highway of Commerce under La. R.S. 14:97, thereby diminishing future damages.[93] Plaintiffs also assert that while most of the class members did not retain counsel in connection with their arrest, those who did retain counsel were served by volunteer attorneys from the American Civil Liberties Union and the National Lawyers Guild, who have filed their own claims for fees in a separate lawsuit captioned *North Baton Rouge Matters v. City of Baton Rouge*, No. 16-463-JWD-RLB. That matter was dismissed on December 6, 2016.[94]

The parties further assert that they do not believe any of the proposed class members have sought medical treatment, including psychiatric or psychological care for emotional distress, due to their arrest and incarceration during the July 2016 protests.[95] While acknowledging that some class members may have suffered serious psychological or physical injuries, Plaintiffs expect such persons to opt-out of the settlement agreement, especially because a group of individuals seeking relief for more serious physical and emotional injuries caused by the July 2016 protests recently filed a lawsuit in this Court captioned *Tennart v. City of Baton Rouge*, No. 17-179-BAJ-RLB.[96] Plaintiffs note that the proposed class does not include protesters who were charged with resisting arrest, where individual factors could preclude class certification.

Because the circumstances surrounding the arrest and incarceration of the proposed class representatives, as well as the legal and remedial theories asserted in the Complaint,[97] are

---

[93] R. Doc. 72 at 6.
[94] *See*, R. Doc. 29 (*citing* R. Doc. 27-1) in *North Baton Rouge Matters v. City of Baton Rouge,* No. 16-463-JWD-RLB.
[95] R. Doc. 72 at 6; R. Doc. 73 at 2.
[96] R. Doc. 72 at 6.
[97] R. Doc. 1.

essentially the same as those of the potential class members, the typicality requirement is satisfied in this case.  Although the class representatives and class members may have been incarcerated for different lengths of time, this difference has been accounted for by creating a tiered system of payment based upon the number of days that each class member spent in jail for allegedly violating La. R.S. 14:97, Simple Obstruction of a Highway of Commerce.  The parties have also excluded from the settlement class those individuals who were incarcerated for more than four days.[98]  Thus, the typicality requirement is met.

### d. *Adequacy of Representation*

Under Rule 23(a)(4), the Court must consider whether the representative parties will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625, 17 S.Ct. 2231, 2250, 138 L.Ed.2d 689 (1997).  Class representatives "must be part of the class and 'possess the same interest and suffer the same injury' as the class members."  *Id*., 521 U.S. at 625-26, 17 S.Ct. at 2250-51 (quotation omitted).  To meet the adequacy requirement, "the court must find that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members."  *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) (citing *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)).

During the March 1, 2017 hearing, the Court questioned the parties regarding whether proposed class representatives DeRay McKesson, Gloria La Riva, Kira Marrero, and Brandon Wayne Erp could adequately represent the proposed settlement class.[99]  Specifically, the Court asked if Mr. Erp was the only proposed class representative who lives in this judicial district,

---

[98] R. Doc. 72-1 at 3-4.
[99] R. Doc. 63 at 3-4.

expressing concern regarding the fact that Mr. Erp was incarcerated for a longer period of time than other proposed class members.[100]  Counsel for the Plaintiffs confirmed that Mr. Erp was the only proposed class representative living in this judicial district, but asserted that Ms. Marrero is believed to be living in New Orleans.[101]  Counsel for the Plaintiffs asserted that Ms. Marrero was selected as a proposed class representative because she may be a college student, or at least college age, and several of the proposed class members are also college age.  Counsel for the Plaintiffs asserted that Mr. McKesson was selected as a proposed class representative because he is associated with the Black Lives Matter movement and has a unique perspective based on his involvement with that organization.[102]  The Court then asked the parties whether any of the proposed class representatives are currently involved in any other litigation, to determine whether their ability to focus on the litigation pending in this judicial district might be impacted.  Counsel for the Plaintiffs responded that he was not aware of their involvement in any other pending litigation, but offered to provide additional information to the Court on the issue.[103]

Since the March 1, 2017 hearing, counsel for the parties have provided additional information to address the foregoing questions and concerns raised by the Court.  As an initial matter, Plaintiffs' counsel has filed a consent motion to dismiss the individual claims of Brandon Wayne Erp and to remove Mr. Erp as a putative class representative in this matter.[104]  Plaintiffs assert that the remaining proposed class representatives, Mr. McKesson, Ms. La Riva, and Ms. Marrero, have all committed to devoting time to this litigation and keeping the entire class informed of the status of the settlement agreement.[105]  Plaintiffs claim that none of the proposed

---

[100] R. Doc. 63 at 3.
[101] R. Doc. 63 at 3.
[102] R. Doc. 63 at 3.
[103] R. Doc. 63 at 3-4.
[104] R. Doc. 74.  *See also,* R. Doc. 72 at 7; R. Doc. 73 at 2.
[105] R. Doc. 72 at 7.

class representatives are believed to be class representatives in other litigation.[106] Plaintiffs assert

that the fact Mr. McKesson and Ms. La Riva live in other states demonstrates that the July 2016

protests were national in scope and that many of the proposed class members travelled from other

states to support the Baton Rouge community.[107] Plaintiffs further claim that they have committed,

at the Court's suggestion, to add a proposed class representative from this judicial district, whose

qualifications can be considered at a hearing to determine final approval of the settlement

agreement, if not sooner.[108]

Although the Court is concerned that none of the proposed class representatives live in this

judicial district at this point, the interests of the proposed class representatives appear to be in

alignment with the interests of the potential class members.  In addition, Plaintiffs have asserted

that they intend to add a proposed class representative who lives in this judicial district.[109]

With respect to proposed class counsel, the parties assert that Plaintiffs' counsel will

adequately represent the settlement class because they regularly engage in civil rights lawsuits,

class actions, and complex litigation.[110] Plaintiffs' counsel have indicated their willingness to

serve as class counsel in this matter by filing the Complaint and participating in the March 1, 2017

hearing and subsequent telephone conferences to discuss the questions and concerns raised by the

undersigned regarding the Joint Motion and the proposed class action forms.[111] Plaintiffs' counsel

also conferred with Defendants' counsel and took steps to revise the MOU and the proposed class

forms to address the Court's concerns.[112] As such, Plaintiffs' counsel have demonstrated that they

---

[106] *Id*.
[107] R. Doc. 72 at 7.
[108] R. Doc. 72 at 8.
[109] R. Doc. 72 at 8.
[110] R. Doc. 52-1 at 9.
[111] *See*, R. Docs. 63, 66, 71.
[112] *See,* R. Docs. 72, 72-1, 78.

will fairly and adequately represent the interests of the class and are qualified to serve as class counsel under Rule 23(g).

As such, the adequacy requirement of Rule 23(a)(4) has been met.

### 2. Rule 23(b) Requirement

In the Joint Motion, the parties assert that class certification is proper under Rule 23(b)(3).[113] Rule 23(b)(3) provides that class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for failure and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) imposes two prerequisites, predominance and superiority. *In re OCA, Inc. Securities and Deritvative Litigation*, 2008 WL 4681369, at *9 (E.D. La. Oct. 17, 2008). "In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). The purpose of this requirement is to ensure that the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 17 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997). To determine whether common issues predominate, "the Court must identify the substantive issues that will control the outcome, assess which issues will predominate, and then determine whether the issues are common to the class." *Everson v. Bunch*, 2016 WL 3255023, at *3 (M.D. La. June 13, 2016) (quoting *Haley v. Merial, Ltd.*, 292 F.R.D. 339, 353 (N.D. Miss. 2013)).

Here, the parties assert that the following questions of law and fact predominate over any questions affecting only individual class members: (1) whether the Defendants' response to the

---

[113] R. Doc. 52-1 at 9-11.  Neither party addressed the Rule 23(b) requirement in their supplemental briefs filed on May 5, 2017.  (*See*, R. Docs. 72, 73).

protesters' actions were unconstitutional; and (2) the compensation owed to the protesters.[114]  As previously discussed, the Court has expressed concerns regarding whether the alleged common questions of law and fact actually predominate over the claims of the individual class members, in light of the different incarceration periods of each class member and the range of claims alleged in the Complaint.[115]   The parties have adequately addressed these concerns by filing a motion to remove Mr. Erp as a putative class representative[116] and specifying in the Notice of Proposed Class Action Settlement that, "Acceptance of the settlement funds includes settlement of all claims you have arising out of your arrest, including emotional and physical injury, lost wages, medical expenses, and any other claims."[117]   The parties have also addressed the Court's concerns by agreeing to a tiered system of payment based upon each class member's length of incarceration and including information about the tiered system of payment in the Notice of Proposed Class Action Settlement and Claim Form.[118] Further, the substantive issues that will control in the instant case are the legality of the class members' arrest during the July 2016 protests and whether excessive bond fees were imposed on the potential class members.  As such, the predominance factor of Rule 23(b)(3) has been satisfied.

In determining whether the superiority requirement of Rule 23(b)(3) is satisfied, the Court may consider the following four factors: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in

---

[114] R. Doc. 52-1 at 10.
[115] R. Doc. 63 at 4-5.
[116] R. Doc. 74.
[117] R. Doc. 73-1 at 2.
[118] R. Docs. 73-1, 73-2.

managing a class action.  Fed. R. Civ. P. 24(b)(3).  The fourth factor may be disregarded in a proposed settlement-only class.  *Everson v. Bunch*, 2016 WL 3255023, at *3 (M.D. La. June 13, 2016) (citation omitted); *See, Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620, 17 S.Ct. 2231, 2248, 138 L.Ed.2d 689 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

The parties assert that a class action is the superior method of adjudicating this matter because all of the potential class members were participating in the same series of events, in the same city, over a short amount of time when they were arrested and detained by the Defendants. The parties also assert that a class action will be less expensive than adjudicating numerous individual suits brought by the potential class members.  Because the potential class members were allegedly harmed by a common set of facts and will rely on the same legal theories, certifying the case as a class action is the superior and most efficient means of resolving the claims.  *See, Everson*, 2016 WL 3255023, at *3.

### 3. Rule 23(g) Requirement

A court that certifies a class must also appoint class counsel.  Fed. R. Civ. P. 23(g).  In appointing class counsel, the court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).

Here, the parties seek to have Plaintiffs' counsel, Roy J. Rodney, Jr. and John Etter of Rodney & Etter, LLC, appointed as class counsel.[119]   The Court has carefully reviewed the qualifications of Mr. Rodney and Mr. Etter and, for the reasons stated in the section regarding adequacy of representation, finds they are well qualified to serve as class counsel.

## IV.   PRELIMINARY FAIRNESS DETERMINATION

### A.  Legal Standard

A class action may not be settled, dismissed, or compromised without the district court's approval.  Fed. R. Civ. P. 23(e).  Although both parties desire settlement in this case, the Court is not at liberty to merely rubberstamp approval.  The Court may approve settlement "only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  "The purpose of having the Court conduct an independent inquiry into the fairness of a class action settlement is to 'ensure that the settlement is in the interest of the class, does not unfairly impinge on the rights and interests of dissenters, and does not merely mantle oppression.'"  *Henderson v. Eaton,* 2002 WL 31415728, at *2 (E.D. La. Oct. 25, 2002) (quoting *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).

Where, as here, the parties seek preliminary approval of a class action settlement, the standards are not as stringent as those applied to a motion for final approval.  *In re Pool Prods. Distrib. Market Antitrust Litig.*, 310 F.R.D. 300, 314 (E.D. La. 2015) (citing *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007)).  "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and

---

[119] R. Doc. 52 at 4.

appears to fall within the range of possible approval, the court should grant preliminary approval." *In re Pool Prods*., 310 F.R.D. at 314-15 (citations omitted).

### B. Discussion

Here, the proposed settlement agreement appears fair in all respects. The settlement was negotiated between the parties at arms' length, represented by experienced and capable attorneys on both sides who were familiar with the factual and legal issues of the case. "Class counsel's opinion should be presumed reasonable because they are in the best position to evaluate fairness due to an intimate familiarity with the lawsuit." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007) (citation omitted). Additionally, the settlement terms seem fair and, "If the terms are fair, the court may reasonably conclude that counsel did perform adequately." *In re Corrugated Container Antitrust Litig*., 643 F.2d 195, 211 (5th Cir. 1981) (footnote omitted).

Although Defendants assert that the parties have not engaged in formal discovery, Defendants assert that the parties have exchanged information necessary to make representations to the Court regarding the proposed settlement agreement.[120] In the Joint Motion, the parties similarly assert that, "Plaintiffs have obtained information about these claims from Defendants in the context of settlement discussions" and "sufficient information was obtained to properly evaluate whether settlement was appropriate.[121] It is also evident from the multiple revisions made to the MOU, the proposed Claim Form, and the proposed Notice of Proposed Class Action Settlement that counsel for the parties are familiar with the factual and legal issues in this case.[122] Thus, counsel for the parties have shown that they are familiar with the factual and legal issues in

---

[120] R. Doc. 73 at 1.
[121] R. Doc. 52-1 at 13.
[122] *See*, R. Docs. 63, 66, 71, 72, 73, 78.

the case.  *See, In re OCA, Inc. Securities and Derivative Litigation,* 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008).

With respect to the economic fairness of the proposed settlement agreement, the parties assert that the proposed settlement is within the range of possible approval.[123]  The parties point out that in addition to each member of the proposed class receiving a settlement amount based on the length of his incarceration, Defendants will provide the following equitable relief: (1) Defendants will file and process a motion to expunge the charge of Simple Obstruction of a Highway of Commerce under La. R.S. 14:97 as to each potential class member, with Defendants assuming all costs of said expungements and waiving their respective fees; (2) Defendants will pay all costs of notice of the settlement; (3) Defendants will reimburse any class member who paid a fee to obtain a bond from a bondsman; and (4) any cash bond posted by or on behalf of a class member will be returned to the individual who posted the bond, without payment of the customary associated bond release fees.[124]

The Court agrees that the foregoing economic and noneconomic benefits provided by the proposed settlement agreement are within a reasonable range for approval because the class members will obtain virtually all of the relief sought in the Complaint.[125]  Thus, the economic terms of the proposed settlement agreement appear fair.

The terms of the proposed settlement agreement also do not appear to give preferential treatment to the proposed class representatives or any individual members of the settlement class. As discussed above, each class member will receive a settlement amount based upon the length of his incarceration, as well as an order expunging the charge of Simple Obstruction of a Highway of

---

[123] R. Doc. 52-1 at 14.
[124] R. Doc. 52-1 at 14; *See*, R. Doc. 72-1 at 4.
[125] R. Doc. 1 at 20-21.

Commerce under La. R.S. 14:97, reimbursement of any fee paid to obtain a bond from a bondsman, and the return of any cash bond posted by or on behalf of a potential class member.[126]  While class members may receive different settlement amounts, the tiered system of compensation is fair and reasonable because it accounts for the different lengths of incarceration experienced by the class members.  Similarly, the reimbursement of any fee paid to a bondsman and the return of any cash bond paid on behalf of a class member is fair and reasonable because it accounts for the different fees paid by the class members in connection with their underlying arrests.

The Court further finds that the proposed settlement agreement does not grant excessive compensation to any of the attorneys since Defendants have agreed to pay "all reasonable attorney fees as may be agreed to among Defendants' counsel and Plaintiffs' counsel after the agreement as to the principal settlement between the class members and Defendants."[127]  The settlement agreement states that if counsel for the parties are unable to reach an agreement regarding attorney's fees, the issue will be referred to this Court for a final decision, which will be accepted by all parties.[128]

The settlement agreement also calls for the release of all claims made, or which could have been made, or which in any way arise out of the allegations that were or could have been made by any class member against Defendants, Nova, and any other company corporately affiliated with any of the Defendants, arising out of the class members' arrests, detention and incarceration pursuant to La. R.S. 14:97 while protesting in Baton Rouge, Louisiana between July 6, 2016 and July 11, 2016.[129]  This release is not impermissibly broad, as it is consistent with other releases approved within and outside this Circuit.  *In re Pool Prods. Distrib. Market Antitrust Litig.*, 310

---

[126] R. Doc. 72-1 at 4.
[127] R. Doc. 72-1 at 5.
[128] *Id*.
[129] R. Doc. 72-1 at 2-3.

F.R.D. 300, 316 (E.D. La. 2015) (citing *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 311-12 (W.D. Tex. 2007)); *In re OCA, Inc. Securities and Deritvative Litigation*, 2008 WL 4681369, at *6 (E.D. La. Oct. 17, 2008); *See, In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221 (5th Cir. 1981) (quoting *Patterson v. Stovall*, 528 F.2d 108, 110 n.2 (7th Cir. 1976)).

The Court has also reviewed the "Exclusion from Class" provision, which allows Defendants and Nova to withdraw from the proposed settlement agreement if more than 20% of potential class members opt-out of the proposed settlement class.[130]  The parties have agreed that Defendants and Nova will give notice of whether they will exercise their right to withdraw from the settlement agreement by September 7, 2017, or within 10 days after the second deadline for Plaintiffs' counsel to inform Defendants of the number of potential class members who have elected to opt-out of the settlement class.[131]  This agreement is not unfair or unreasonable.  *See*, *In re OCA,* 2008 WL 4681369, at *14 (finding provision allowing defendants to withdraw from the settlement agreement if potential class members excluded themselves from the class was not unreasonable or unfair).

## V.   NOTICE

### A.  Content of the Notice

When class certification is sought under Fed. R. Civ. P. 23(b)(3), as in the instant case, notice of the proposed settlement agreement must state the following: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members under Rule

---

[130] R. Doc. 72-1 at 6.
[131] R. Doc. 72-1 at 6; R. Doc. 73-5 at 3.

23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).  Rule 23(e) further provides that the claims, issues, or defenses of a certified class may be settled only with the court's approval and that the court must direct notice in a reasonable manner to all class members who would be bound by the proposed settlement.  Fed. R. Civ. P. 23(e)(1).

The Court has reviewed the proposed notice and finds that it meets the requirements of Rule 23(c)(3) and Rule 23(e)(1).  The plain language of the notice apprises all potential class members of the nature of the action, the definition of the class, the class claims, the class members' right to be heard, the class members' right to exclusion, the time and manner for requesting exclusion, the deadline for filing a claim, and the binding effect of a class judgment.[132]  The notice also discloses that the settlement amount received by each class member will be based upon his length of incarceration.[133]  Class members who receive the initial notice sent by first class United States mail may opt-out of the settlement class by mailing a written request for exclusion to Plaintiffs' counsel by July 17, 2017.[134]  Class members who receive the second notice sent by express mail, return receipt requested may opt-out of the settlement class by mailing a written request for exclusion to Plaintiffs' counsel by August 4, 2017.[135]

Class members who wish to object to the proposed settlement must personally deliver or mail a written objection to the Court by July 17, 2017, or 45 days from the initial notice mailing date.[136]  For class members who received the second notice by express mail, return receipt requested, a written objection must be personally delivered or mailed to the Court by August 4, 2017, or 35 days from the expected receipt of the second notice.[137]

---

[132] R. Docs. 73-1, 73-2.
[133] R. Doc. 73-1.
[134] R. Doc. 73-1 at 2; R. Doc. 73-5 at 2.
[135] R. Doc. 73-5 at 3.
[136] R. Doc. 73-1 at 2-3; R. Doc. 73-5 at 3.
[137] R. Doc. 73-1 at 3; R. Doc. 73-5 at 3.

### B.  Method of Notice

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  "The Due Process Clause also gives unnamed class members the right to notice of the settlement of a class action." *In re Pool Prods.*, 310 F.R.D. at 317 (citing *Fidel v. Farley*, 534 F.3d 508, 513–14 (6th Cir. 2008)). The notice must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Pool Prods.*, 310 F.R.D. at 317 (quoting *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005)) (internal quotations omitted).  According to the Fifth Circuit, "the type of notice to which a member of a class is entitled depends upon the information available to the parties about that person."  *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir. 1977).  "Thus, due process does not require *actual* notice to all class members who may be bound by the litigation."  *In re Pool Prods.*, 310 F.R.D. at 317 (citing *Fidel*, 534 F.3d at 514) (emphasis in original).

Here, the proposed settlement agreement provides that each class member will be notified by first class United States mail to the address provided at the time of the class member's arrest, detention, and release in connection with the July 2016 protests.[138]  Defendants have agreed to prepare a mailing list of the names and addresses of all potential class members[139] and Plaintiffs' counsel will send the notice within three days after the settlement agreement is preliminarily approved by this Court.[140]

---

[138] R. Doc. 52-1 at 15.
[139] R. Doc. 72-1 at 5.
[140] R. Doc. 73-5 at 2.  *See, supra,* note 47.

During the March 1, 2017 hearing, counsel for the Defendants explained that the names and addresses of the proposed class members were obtained from the booking records from the arrests of the proposed class members, as well as the information the proposed class members provided to the bond companies.[141]  Counsel for Defendants also asserted that if multiple addresses were provided, then the notice would be sent to each address provided.[142]  If a mailed notice is returned undeliverable, a second notice will be sent by express mail, return receipt requested on June 28, 2017.[143]

The proposed notice satisfies the requirements of Rule 23(c)(2)(B) and due process.  The Court recognizes that in many cases the proposed notice is published in print and/or on the web in order to provide notice to class members whose mailing addresses are unavailable.  *See*, *In re Pool Prods.*, 310 F.R.D. at 318 (direct emailing of notice to those potential class members for whom the parties have a valid email address, along with publication of the notice in print and on the internet, satisfied the requirements of Rule 23(c)(2)(B) and due process); *In re OCA,* 2008 WL 4681369, at *16 (same).  Here, mailing the notice to potential class members at the addresses provided at the time of their arrest, detention, and release is the "best notice practicable under the circumstances" because the Defendants have made a reasonable effort to identify the class members for individual notice.  *See, In re OCA,* 2008 WL 4681369, at *16.

Additionally, publication of the notice is not necessarily required, especially where, as here, the information regarding the names and addresses of the potential class members comes from a reliable source and there is a mechanism in place in the event that any notices are returned undeliverable.  The direct mailing of notice to potential class members by first class United States

---

[141] R. Doc. 63 at 5; *See,* R. Doc. 72 at 8.
[142] R. Doc. 63 at 5.  *See also*, R. Doc. 72 at 8.
[143] R. Doc. 73-5 at 2.

mail or by express mail, return receipt requested, to the addresses provided at the time of their arrest, booking, bonding, and release is reasonably calculated to apprise the potential class members of the settlement agreement.  The class members will then have 45 days from the mailing date of the notice to submit an opt-out request to Plaintiffs' counsel.[144]  Accordingly, the Court approves the Notice of Proposed Class Action Settlement[145] and the plan of notice.

## VI.   CLAIMS ADMINISTRATOR

In the Joint Motion, the parties seek to have Roy J. Rodney, Jr. and John Etter of Rodney & Etter, LLC, appointed as the claims administrators.[146]  As the claims administrator, Plaintiffs' counsel will be responsible for: (1) answering questions from potential class members regarding the proposed settlement agreement and the submission of claims or objections; (2) receiving and processing claims submitted regarding the settlement funds and objections to the proposed settlement agreement; (3) corresponding with class members regarding deficient claims or objections to the proposed settlement agreement; (4) corresponding with counsel for Defendants regarding the number of class members who opted-out of the settlement class; and (5) distributing settlement funds to the class members.[147]

Although it is customary for parties to provide information regarding the estimated fees and expenses that will be sufficient to cover these administrative costs,[148] the parties in this case have agreed that, "Defendants will not be responsible for any fees, costs or expenses including

---

[144] R. Doc. 72-1 at 6.
[145] R. Doc. 73-1.
[146] R. Doc. 52 at 4; *See,* R. Doc. 72-1 at 7.
[147] R. Doc. 72-1 at 6; R. Doc. 73-1 at 1-2; R. Doc. 73-2.  The parties must resolve who is responsible for sending the notice before seeking final approval of the settlement.  (*See, supra,* note 47).
[148] *See, In re Pool Prods.,* 310 F.R.D. at 318 (proposed claims administrator approved where parties asserted that $145,000 would be sufficient to cover the costs to administer the settlement); *In re OCA,* 2008 WL 4681369, at *17 (proposed claims administrator approved where parties estimated that the cost of administering settlement would be between $160,000 and $175,000).

attorneys' fees, relating to the distribution process or its administration."[149]  Further, Plaintiffs' counsel are not requesting that their attorney's fees be deducted from the settlement amount agreed to by the parties.

After reviewing the experience of Plaintiffs' counsel and their proposed plan to administer the settlement, the Court is satisfied that Plaintiffs' counsel will competently administer the settlement.  Thus, the Court appoints Roy J. Rodney, Jr. and John Etter of Rodney & Etter, LLC as the claims administrators.

## IV. CONCLUSION

For the foregoing reasons, the Joint Motion for Preliminary Approval of Settlement Agreement, Form, Content and Manner of Notice Distribution and Publication, and Certification for Settlement Purposes Only[150] is **GRANTED in part**.  To the extent that the Joint Motion seeks approval of the proposed class forms attached thereto as Exhibit 1[151] the motion is **DENIED**, as the class forms have since been revised and re-submitted to the Court for approval as Exhibits 1-4[152] to the Defendants [sic] Memorandum on Preliminary Approval of Settlement Agreement Following 5/1/17 Court Conference,[153] which are hereby preliminarily approved.  The Joint Motion is otherwise **GRANTED**.  For the same reasons, the Proposed Class Forms and Request for Fairness Hearing, Settlement Approval and Class Certification[154] is **DENIED as moot**.  A

---

[149] R. Doc. 72-1 at 7.
[150] R. Doc. 52.
[151] R. Doc. 52-4.
[152] R. Docs. 73-1, 73-2, 73-3, 73-4.
[153] R. Doc. 73.
[154] R. Doc. 67.

detailed procedural order will be issued in conjunction with this opinion.

Signed in Baton Rouge, Louisiana, on May 30, 2017.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**